IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Criminal Action No.

UNITED STATES OF AMERICA,

     Plaintiff,

v.

     ANDERSON LEE ALDRICH,
     a/k/a Nicholas Brink,

     Defendant.

---

## PLEA AGREEMENT

---

The United States of America, by and through Alison Connaughty and Bryan Fields, Assistant United States Attorneys for the District of Colorado, Maura White, Trial Attorney for the Civil Rights Division, and the defendant, Anderson Lee Aldrich, personally and by counsel, David Kraut, Natalie Stricklin, and Teri Duncan, submit the following Plea Agreement pursuant to D.C.COLO.LCrR 11.1. This agreement binds the Criminal Division of the United States Attorney's Office for the District of Colorado and the Civil Rights Division (the government), and the defendant.

## I.   AGREEMENT

### A. Defendant's Plea of Guilty:

The defendant agrees to

**COURT EXHIBIT 1**

(1)    Waive indictment and plead guilty to a 74-Count Information charging violations of: 18 U.S.C. Sections 249(a)(2)(A)(ii)(I), (B)(ii), (B)(iii), (B)(iv)(I), and (B)(iv)(II) (Counts 1-5); 249(a)(2)(A)(ii)(II), (B)(ii), (B)(iii), (B)(iv)(I), and (B)(iv)(II) (Counts 6-50); 924(j)(1) (Counts 51-55); and 924(c)(1)(A)(iii) (Counts 56-74).

(2)    Waive certain appellate and collateral attack rights, as explained in detail below;

(3)    Be liable for restitution in an amount to be determined by the Court, which could include joint and several liability for some or all of the amount with other as yet uncharged co-conspirators;

(4)    Waive certain rights to records, as more fully described below;

(5)    Abandon certain property, as more fully described below; and

(5)    Assign to the United States any profits or proceeds from publicity as more fully described below.

## B. Government's Obligations:

This agreement is made pursuant to Fed.R.Crim.P.11(c)(1)(C) and the parties agree to the following: sentences of life imprisonment on Counts 1 through 55, to run concurrently to each other and to any other sentences the defendant is currently serving; sentences of ten years' imprisonment on each of Counts 56 through 74, to run consecutive to each other (for a total of 190 years), the life imprisonment sentences on Counts 1 through 55, and any other sentences the defendant is serving. The parties agree this is the appropriate disposition in the case. The parties understand that, once the Court accepts the plea agreement, the Court is required to enter the above-described sentence. The parties further understand that, if the Court informs the parties that it intends to impose a sentence different from the above-described sentence, either party has the right to withdraw from the plea agreement.

The government further agrees that it will recommend that the Colorado Department of Corrections retain primary jurisdiction over the defendant. If a request is made by the Colorado Department of Corrections to request transfer of the defendant to Federal custody, the government agrees to recommend that such a transfer be denied. The defendant understands that the government's recommendations do not bind the Colorado Department of Corrections.

### C. Defendant's Waiver of Appeal:

The defendant is aware that 18 U.S.C. § 3742 affords the right to appeal the sentence, including the manner in which that sentence is determined. Understanding this, and in exchange for the concessions made by the government in this agreement, the defendant knowingly and voluntarily waives the right to appeal any matter in connection with this prosecution, conviction, or sentence (including the restitution order), unless the government appeals the sentence imposed, in which case the defendant may appeal on any ground that is properly available in an appeal that follows a guilty plea.

The defendant also knowingly and voluntarily waives the right to challenge this prosecution, conviction, or sentence (including the restitution order) in any collateral attack (including, but not limited to, a motion brought under 28 U.S.C. § 2255). This waiver provision does not prevent the defendant from seeking relief otherwise available in a collateral attack on any of the following grounds:

> (a)   the defendant should receive the benefit of an explicitly retroactive change in the sentencing guidelines or sentencing statute;
>
> (b)    the defendant was deprived of the effective assistance of counsel; or

(c)     the defendant was prejudiced by prosecutorial misconduct.

The defendant also waives the right to appeal the denial of any motion filed under 18 U.S.C. § 3582(c)(1)(A) where such denial rests in any part upon the court's determination that a sentence reduction is not warranted under the factors set forth in 18 U.S.C. § 3553(a). This waiver does not apply to an appeal of a denied § 3582(c)(1)(A)(i) motion where the district court, in denying the motion on § 3553(a) grounds, failed to consider the facts allegedly establishing extraordinary and compelling circumstances as part of its § 3553(a) analysis.

### D. Defendant's Waiver of Right to Records:

The defendant also waives all rights to request or receive from any department or agency of the United States any records pertaining to the investigation or prosecution of this case, including any records that may be sought under the Freedom of Information Act, 5 U.S.C. § 552, or the Privacy Act of 1974, 5 U.S.C. § 552a.

### E. Defendant's Agreement to Abandon Property:

The defendant agrees that all digital devices seized from the defendant's residence or vehicle, which were seized from the defendant for evidentiary purposes, and which are currently in the custody or control of the Colorado Springs Police Department, were lawfully seized and are evidence, contraband, or fruits of the crimes to which the defendant is pleading guilty. The defendant, as sole and rightful owner, relinquishes and abandons all claims, title, and interest the defendant has in such property with the understanding and consent that Colorado Springs Police Department may dispose of the property without further obligations.

**F. Assignment of Any Profits or Proceeds from Publicity**

The defendant hereby assigns to the United States any profits or proceeds which they may be entitled to receive in connection with any publication or dissemination of information relating to the offenses of conviction or the facts and circumstances leading to their apprehension and conviction. This assignment shall include all profits and proceeds for the benefit of the defendant, regardless of whether such profits and proceeds are payable to themself or to others, directly or indirectly, for their benefit or for the benefit of the defendant's associates or a current or future member of the defendant's family. The defendant shall not circumvent this assignment by assigning the rights to their story to an associate or to a current or future member of the defendant's family, or to another person or entity who would provide some financial benefit to the defendant, to the defendant's associates, or to a current or future member of the defendant's family. Moreover, the defendant shall not circumvent this assignment by communicating with an associate or a family member for the purpose of assisting or facilitating their profiting from a public dissemination, whether such an associate or other family member is personally or directly involved in such dissemination.

## II.    ELEMENTS OF THE OFFENSES

The parties agree that the hate crimes charged in Counts 1 through 5 of the Information, in violation of 18 U.S.C. § 249(a)(2)(A)(ii)(I), (B)(ii), (B)(iii), (B)(iv)(I), and (B)(iv)(II), have the following elements:[1]

---

[1] *See* Charge of the Hon. Brian M. Morris, *United States v. Howald*, 6:21-cr-

1.      The defendant willfully caused, or attempted to cause, bodily injury to the person identified in the relevant Count of the Information;

2.      The defendant acted because of the actual or perceived sexual orientation or gender identity of any person;

3.      In connection with the defendant's conduct, the defendant used a channel, facility or instrumentality of interstate commerce; employed a dangerous weapon that traveled in interstate or foreign commerce; interfered with commercial or other economic activity; or otherwise affected interstate and foreign commerce; and

4.      The defendant's offense resulted in the death of the person identified in the relevant count of the Information.

The parties agree that the hate crimes charged in Counts 6 through 50 of the Information, in violation of 18 U.S.C. § 249(a)(2)(A)(ii)(II), (B)(ii), (B)(iii), (B)(iv)(I), and (B)(iv)(II) have the following elements:[2]

1.      The defendant willfully caused, or attempted to cause, bodily injury to the person identified in the relevant count of the Information;

2.      The defendant acted because of the actual or perceived sexual

---

00004-BMM, ECF NO. 138 (D. Mt. Feb. 17, 2023) (modified); Charge of the Hon. Robert J. Colville, *United States v. Bowers*, 2:18-cr-002920RJC, ECF No. 1357 (W.D. Pa. June 19, 2023) (modified to reflect § 249(a)(2)(A)(ii)(I)).

[2] *See* Charge of the Hon. Brian M. Morris, *United States v. Howald*, 6:21-cr-00004-BMM, ECF NO. 138 (D. Mt. Feb. 17, 2023) (modified); Charge of the Hon. Robert J. Colville, *United States v. Bowers*, 2:18-cr-002920RJC, ECF No. 1357 (W.D. Pa. June 19, 2023) (modified to reflect § 249(a)(2)(A)(ii)(II)); Tenth Circuit Pattern Jury Instruction No 1.38 (2021 ed.) (modified).

orientation or gender identity of any person;

       3.     In connection with the defendant's conduct, the defendant used a channel, facility or instrumentality of interstate commerce; employed a dangerous weapon that traveled in interstate or foreign commerce; or interfered with commercial or other economic activity in which the person identified in the relevant count of the Information was engaged; or otherwise affected interstate or foreign commerce; and

       4.     The offense included an attempt to kill, that is the defendant took a substantial step towards intentionally killing the person identified in the relevant count of the Information.

The parties agree that the gun crimes charged in Counts 51 through 55 of the Information, in violation of 18 U.S.C. § 924(j)(1), have the following elements:

       1.     The defendant committed the hate crime charged in the relevant count of the Information (Counts 1 through 5), which is a crime of violence for which a person may be prosecuted in a court of the United States;

       2.     During and in relation to the commission of the hate crime charged in the relevant count of the Information (Counts 1 through 5), the defendant knowingly used or carried and discharged a firearm;

       3.     In the course of using or carrying a firearm during and in relation to the hate crime charged in the relevant count of the Information (Counts 1 through 5), the defendant caused the death of another person through the use of a firearm; and

4.      The defendant's killing constitutes murder, that is, the unlawful killing of a human being with malice aforethought.[3]

The parties agree that the gun crimes charged in Counts 56 through 74 of the Information, in violation of 18 U.S.C. § 924(c)(1)(A)(iii), have the following elements:

1.      The defendant committed the hate crime charged in the relevant count of the Information (Counts 6 through 50), which is a crime of violence for which a person may be prosecuted in a court of the United States;

2.      The defendant knowingly used or carried a firearm;

3.      The defendant used or carried the firearm during and in relation to the hate crime charged in the relevant count of the Information (Counts 6 through 50), and

4.      The firearm the defendant used or carried was discharged.[4]

### III.    STATUTORY MAXIMUM SENTENCE

The maximum sentence for each of the offenses charged in Counts 1-50 of the Information is: life imprisonment, a $250,000 fine, or both; 5 years of supervised release; a $100 mandatory victim's fund assessment fee; and restitution in an amount to be determined by the Court at sentencing.

The maximum sentence for each of the offenses charged in Counts 51-55 of the Information is: life imprisonment or death, a $250,000 fine, or both; 5 years of

---

[3] *See* Charge of the Hon. Robert J. Colville, *United States v. Bowers*, 2:18-cr-002920RJC, ECF No. 1357 (W.D. Pa. June 19, 2023); Tenth Circuit Pattern Jury Instruction Nos. 2.45 and 2.52 (2021 ed.) (modified).

[4] Tenth Circuit Pattern Jury Instruction No. 2.45 (modified)

supervised release; a $100 mandatory victim's fund assessment fee; and restitution in an amount to be determined by the Court at sentencing.

The maximum sentence for each of the offenses charged in Counts 56-74 of the Information is: no less than 10 years' imprisonment and no more than life imprisonment, a $250,000 fine, or both; 5 years of supervised release; a $100 mandatory victim's fund assessment fee; and restitution in an amount to be determined by the Court at sentencing.

## IV.    COLLATERAL CONSEQUENCES

The conviction may cause the loss of civil rights, including, but not limited to, the rights to possess firearms, vote, hold elected office, and sit on a jury.

If the defendant is an alien, the conviction may cause the defendant to be deported and removed from the United States, or confined indefinitely if there is no country to which the defendant may be deported, denied future admission into the United States, and/or to be denied citizenship.

## V.    STIPULATION OF FACTS

The factual basis for this plea is set forth below. Because the Court must, as part of its sentencing methodology, compute the advisory guideline range for the offense of conviction, consider relevant conduct, and consider the other factors set forth in 18 U.S.C. § 3553, additional facts may be included below which are pertinent to those considerations and computations.

This stipulation of facts does not preclude either party from presenting non-contradictory additional facts which are relevant to the Court's guideline

computation, to other 18 U.S.C. § 3553 factors, or to the Court's overall sentencing decision.

The parties stipulate that the following facts are true and correct.

Beginning at approximately 11:56 p.m. on November 19, 2022, the defendant, ANDERSON LEE ALDRICH, a/k/a Nicholas Brink, carried out a bias-motivated, premeditated, mass-casualty attack at Club Q. Utilizing an AR-15 style assault rifle and a Glock pistol, the defendant opened fire on patrons inside of the club. In total, the defendant killed five individuals, caused 18 individuals to suffer gunshot wounds and sustain serious bodily injury, caused one individual to sustain a graze wound, and victimized 26 other individuals who were on the Club Q premises at the time of the shooting. The defendant admits that they[5] targeted these individuals because of their actual or perceived sexual orientation and gender identity. The defendant further admits that they engaged in substantial planning and preparation in advance of their willful, deliberate, malicious, and premeditated attack.

The defendant knew that Club Q was one of only a few nightclubs in Colorado Springs, Colorado, catering to the LGBTQIA+ community. Club Q's large sign with rainbow colors, the rainbow-colored wood panels on its outside and its digital and physical advertising of scheduled programming proudly proclaimed its actual and perceived welcoming of people all along the gender and sexuality spectrums as part of a business engaged in interstate commerce. Sign boards outside the club on

---

[5] The defendant uses they/them pronouns.

November 19, 2022, showed that Club Q was hosting a Drag Show at 9:00 p.m. That show was part of a weekend collection of events centered around Transgender Day of Remembrance that Club Q had advertised.

At approximately 11:55 p.m. on November 19, 2022, the defendant drove their gold Toyota Highlander through the parking lot of Club Q and parked in front of the entryway door of Club Q. The defendant got out of the car wearing a tactical vest with ballistic plates and walked into Club Q carrying a loaded 5.56 NATO caliber, gas-piston, AR-15 style assault rifle with no serial number (the "rifle") and several additional magazines loaded with ammunition.

The defendant entered Club Q with the rifle in ready position and immediately started shooting. The defendant shot D.A. (Count 1), a Club Q employee, in the vestibule entryway of Club Q. The defendant moved directly from the entrance and fired multiple rounds towards the bar area. The defendant shot and killed R.G.V. (Count 2) in the bar area. The defendant also shot and killed K.L. (Count 3), A.P. (Count 4), and D.R. (Count 5) in the bar area.

The defendant moved to the dance floor shortly thereafter, still firing the weapon. As the defendant kept firing, they willfully caused bodily injury through gunshot wounds or a graze wound to each of the people listed below, whose identities are known to the United States Attorney:

| Count | Person |
|-------|--------|
| 06 | I.A. |
| 07 | L.B. |

| Count | Person |
| --- | --- |
| 08 | T.B. |
| 09 | P.C. |
| 10 | J.D. |
| 11 | A.G. |
| 12 | B.H. |
| 13 | T.J. |
| 14 | F.J. |
| 15 | W.K. |
| 16 | C.L. |
| 17 | J.L. |
| 18 | J.Lo. |
| 19 | A.M. |
| 20 | T.Pr. |
| 21 | M.S. |
| 22 | E.S. |
| 23 | C.S. |
| 24 | J.S. |

The defendant also willfully attempted to cause bodily injury to many others who were on the Club Q premises through the use of a firearm, including the people listed below, whose identities are known to the United States Attorney:

| Count | Person |
|-------|--------|
| 25 | M.A. |
| 26 | J.A. |
| 27 | M.B. |
| 28 | A.B. |
| 29 | B.C. |
| 30 | D.D. |
| 31 | J.F. |
| 32 | K.F. |
| 33 | R.F. |
| 34 | M.G. |
| 35 | C.G. |
| 36 | S.H. |
| 37 | A.L. |
| 38 | C.Lo. |
| 39 | I.L. |
| 40 | D.M. |
| 41 | D.N. |
| 42 | R.P. |
| 43 | S.R. |
| 44 | M.R. |
| 45 | R.R. |

| Count | Person |
|-------|--------|
| 46 | S.S. |
| 47 | J.T. |
| 48 | D.V. |
| 49 | R.V. |
| 50 | B.W. |

As the defendant continued the attack and moved towards the exterior smoking patio of Club Q, two of Club Q's patrons, R.F. (Count 33) and T.J. (Count 13), forcibly removed the rifle from the defendant's person. After being disarmed of the rifle, the defendant accessed a loaded Glock 17-type 9 x 19mm caliber Privately Manufactured Firearm from their person and shot patron T.J. (Count 13) twice in the torso. D.N. (Count 41) came to T.J. and R.F.'s aid and helped subdue the defendant after the defendant was on the ground.

The defendant remained on the ground until law enforcement arrived. In total, the defendant fired approximately 60 rounds of ammunition from their rifle before they were subdued and placed under arrest.

The defendant's attack on Club Q was premeditated. Prior to their attack on Club Q, the defendant used channels, facilities, and instrumentalities of interstate commerce, namely computers, internet service providers, web-based retail platforms, web-based financial payment process platforms, and interstate commercial mail carriers, to spread hate and to acquire firearm components,

ammunition, and tactical gear in connection with a plan to commit a mass shooting at Club Q. The defendant also used electronic communication service providers operating in interstate and foreign commerce to plan the attack and to tell others about the planned attack. The ammunition that the defendant used in the attack constitutes a dangerous weapon and traveled in interstate and foreign commerce.

Additionally, the defendant amassed weapons in advance of the attack at Club Q. Financial records show that the defendant made approximately $9,070 in weapons-related purchases from at least 56 different vendors between September 2020 and November 19, 2022.

The defendant also visited Club Q on multiple occasions prior to the date of the shooting and they were familiar with the layout of the club. The defendant patronized Club Q at least eight times prior to the shooting, including on October 1, 2022, on October 29, 2022, and on November 19, 2022, approximately an hour and a half prior to the shooting. A hand-drawn map of Club Q with an arrow indicating an entry and exit point was located in the defendant's apartment after the shooting. The defendant also had a black binder of training material entitled "How to Handle an Active Shooter."

The defendant used anti-LGBTQIA+ rhetoric and expressed interest in mass shootings prior to the Club Q attack. They told an online acquaintance that they hated the LGBTQIA+ community. On October 28, 2022, the defendant was terminated from their employer. They facilitated their supervisor receiving thousands of bias-motivated spam email messages using racist and anti-LGBTQIA+

slurs. The defendant also posted videos online of a mass shooting in Thailand on the same day.

Additionally, the defendant used online platforms for their anti-LQBTQIA rhetoric. The defendant shared a link with an online acquaintance on November 6, 2022. This link included the following statement, "Transgenderism however is a mental illness and should be addressed as such." On November 9, 2022, the defendant sent messages to an online acquaintance about how the defendant made the lower receiver of the handgun that was likely used in the Club Q shooting with a link to the website that provided instructions. Later that same day, the defendant sent the same online acquaintance a link and a list of websites that can be utilized to locate offenders and court dockets, stating "this is for after convictions happen." On November 15, 2022, the defendant sent an online acquaintance a photograph, which appears to depict a rifle sight pointed at a Gay Pride Parade, accompanied by the message "lol."

The defendant's attack on Club Q interfered with the club's ability to provide a safe, fun, and welcoming environment for patrons who had gathered there during and after the drag show as part of a weekend of events related to Transgender Day of Remembrance, all of which constituted commercial and economic activity. The defendant's attack further caused Club Q to cease commercial operations, which affected interstate commerce. Club Q remains closed as a result of the defendant's attack. The defendant's conduct, through purchasing weapons online and closure of Club Q, among other things, otherwise affected interstate and foreign commerce.

The defendant admits that on or about November 19, 2022, in the State and District of Colorado, they willfully caused bodily injury to each of the people listed below, whose identities are known to the United States Attorney, because of the actual and perceived sexual orientation and gender identity of any person:

| Count | Person |
|-------|--------|
| 01 | D.A. |
| 02 | R.G.V. |
| 03 | K.L. |
| 04 | A.P. |
| 05 | D.R. |

The defendant admits that offenses resulted in the death of each person listed in Counts One through Five.

The defendant admits to knowingly using or carrying, and discharging, a firearm during and in relation to these offenses and in such a manner as to constitute murder as defined by Title 18, United States Code, Section 1111, in that the defendant, with malice aforethought, unlawfully killed each victim listed in Counts 1 through 5 with a firearm.

The defendant admits that on or about November 19, 2022, in the State and District of Colorado, they willfully caused bodily injury to each of the people listed below, whose identities are known to the parties, because of the actual and perceived sexual orientation and gender identity of any person:

| Count | Person |
|-------|--------|
| 06 | I.A. |
| 07 | L.B. |
| 08 | T.B. |
| 09 | P.C. |
| 10 | J.D. |
| 11 | A.G. |
| 12 | B.H. |
| 13 | T.J. |
| 14 | F.J. |
| 15 | W.K. |
| 16 | C.L. |
| 17 | J.L. |
| 18 | J.Lo. |
| 19 | A.M. |
| 20 | T.Pr. |
| 21 | M.S. |
| 22 | E.S. |
| 23 | C.S. |
| 24 | J.S. |

The defendant admits that the offenses charged in Counts 6 through 24 included an attempt to kill.

Page 18 of 24

The defendant admits that on or about November 19, 2022, in the State and District of Colorado, they willfully attempted to cause bodily injury through the use of a firearm to each of the people listed below, whose identities are known to the parties, because of the actual and perceived sexual orientation and gender identity of any person:

| Count | Person |
|-------|--------|
| 25 | M.A. |
| 26 | J.A. |
| 27 | M.B. |
| 28 | A.B. |
| 29 | B.C. |
| 30 | D.D. |
| 31 | J.F. |
| 32 | K.F. |
| 33 | R.F. |
| 34 | M.G. |
| 35 | C.G. |
| 36 | S.H. |
| 37 | A.L. |
| 38 | C.Lo. |
| 39 | I.L. |
| 40 | D.M. |

| Count | Person |
|-------|--------|
| 41 | D.N. |
| 42 | R.P. |
| 43 | S.R. |
| 44 | M.R. |
| 45 | R.R. |
| 46 | S.S. |
| 47 | J.T. |
| 48 | D.V. |
| 49 | R.V. |
| 50 | B.W. |

The defendant admits that, in connection with Counts One through Fifty, they used a channel, facility and instrumentality of interstate commerce, they employed a dangerous weapon that traveled in interstate and foreign commerce, their conduct interfered with commercial and other economic activity in which the victims were engaged at the time, and their conduct otherwise affected interstate and foreign commerce.

The defendant further admits that the deaths and attempts to kill described in Counts 1 through 50 constitute crimes of violence for which they may be prosecuted in a court of the United States. The defendant admits to knowingly using or carrying, and discharging, a firearm during and in relation to these crimes of violence.

## VI.   ADVISORY GUIDELINE CALCULATION

The parties understand that the imposition of a sentence in this matter is governed by 18 U.S.C. § 3553. In determining the particular sentence to be imposed, the Court is required to consider seven factors. One of those factors is the sentencing range computed by the Court under advisory guidelines issued by the United States Sentencing Commission. In order to aid the Court in this regard, the parties set forth below their estimate of the advisory guideline range called for by the United States Sentencing Guidelines. To the extent that the parties disagree about the guideline computations, the recitation below identifies the matters which are in dispute.

The Guideline calculation below is the good-faith estimate of the parties, but it is only an estimate. The parties understand that the government has an independent obligation to assist the Court in making an accurate determination of the correct guideline range. To that end, the government may argue that facts identified in the presentence report, or otherwise identified during the sentencing process, affect the estimate below.

1. <u>**Counts One through Five:   18 U.S.C. § 249(a)(2)(A)(ii)(I), (B)(ii), (B)(iii), (B)(iv)(I), and (B)(iv)(II)**</u>

   a)   Under Sections 2H1.1(a) and 2A1.1, the base offense level is 43.

   b)   Under Section 3A1.1, the selection of victims as the object of the offense of conviction because of the actual or perceived gender identity or sexual orientation increases the offense level by 3 levels.

   c)   Under Section 3B1.5, the use of body armor increases the offense level by 4 levels.

d)   The adjusted offense level is 50.

2.  **Counts Six through Nine, Eleven Through Thirteen, Sixteen through Twenty-Four: 18 U.S.C. § 249(a)(2)(A)(ii)(II), (B)(ii), (B)(iii), (B)(iv)(I), and (B)(iv)(II)**

   a)   Under Sections 2H1.1(a) and 2A2.1(a), the base offense level is 33.

   b)   Under Section 2A2.1(b)(1), the victim sustaining permanent or life-threatening bodily injury increases the offense level by 4 levels.

   c)   Under Section 3A1.1, the selection of victims as the object of the offense of conviction because of the actual or perceived gender identity or sexual orientation increases the offense level by 3 levels.

   d)   Under Section 3B1.5, the use of body armor increases the offense level by 4 levels.

   e)   The adjusted offense level is 44.

3.  **Counts Ten, Fourteen, Fifteen, and Twenty-Five through Fifty:  18 U.S.C. § 249(a)(2)(A)(ii)(II), (B)(ii), (B)(iii), (B)(iv)(I), and (B)(iv)(II)**

   a)   Under Sections 2H1.1(a) and 2A2.1(a), the base offense level is 33.

   b)   Under Section 3A1.1, the selection of victims as the object of the offense of conviction because of the actual or perceived gender identity or sexual orientation increases the offense level by 3 levels.

   c)   Under Section 3B1.5, the use of body armor increases the offense level by 4 levels.

   d)   The adjusted offense level is 40.

4.   Due to the multiple counts, a grouping analysis must be conducted.

   a)   Under Section 3D1.2(d), offenses under Section 2H1.1 are specifically excluded from grouping. The combined offense level

is determined by adding units to the highest offense level, which is 50.

    b)    Under Section 3D1.4(a), each count of the Information adds one Unit, resulting in an additional 49 units. Under the same Section, more than 5 units results in an offense level increase of 5 levels, resulting in a final adjusted offense level of 55.

5. Pursuant to Section 3E1.1, three levels are subtracted for acceptance of responsibility, resulting in a final adjusted offense level of 52.

6. Under Chapter 5, Part A, Application Note 2, offense levels greater than 43 are to be treated as offense level 43.

7. The parties understand that the defendant's criminal history computation is tentative and based on the defendant's prior convictions. The parties believe the defendant is in criminal history category I.

8. The career offender/criminal livelihood/armed career criminal adjustments do not apply.

9. The advisory guideline range resulting from these calculations is life imprisonment.

10. Pursuant to Section 5E1.2, assuming the estimated offense level above is correct, the fine range for this offense would be $50,000 to $500,000, plus applicable interest and penalties.

11. Pursuant to Section 5D1.2, if the Court imposes a term of supervised release, that term shall be at least 2 years, but not more than 5 years.

12. **Counts Fifty-One through Fifty-Five: 18 U.S.C. § 924(j)(1)**

    a)    Under Section 2K2.4(b), the guideline sentence for a conviction of 18 U.S.C. § 924(j)(1), is the minimum term of imprisonment required by statute. Therefore, the guideline sentence is imprisonment for any term of years or for life.

13. **Counts Fifty-Six through Seventy-Four 18 U.S.C. § 924(c)(1)(A)(iii)**

    a)    Under Section 2K2.4(b), the guideline sentence for a conviction of 18 U.S.C. § 924(c)(1)(A)(iii) is the minimum term of imprisonment required by statute. Therefore, the guideline sentence is ten years' imprisonment.

## VII.   ENTIRE AGREEMENT

The agreement disclosed to the Court is the entire agreement. There are no

other promises, agreements or "side agreements," terms, conditions,

understandings, or assurances, express or implied. In entering this agreement,

neither the government nor the defendant has relied, or is relying, on any other

terms, promises, conditions or assurances.

Date: 6/14/24        _ANDY A_____

                          Anderson Lee Aldrich
                          Defendant

Date: 6|14|24

                          David Kraut
                          Attorney for Defendant

Date: _____

                          ~~Natalie Stricklin~~
                          ~~Attorney for Defendant~~

Date: _____

                          ~~Jean Philip~~
                          ~~Attorney for Defendant~~

Date: 6/18/24

                          Alison Connaughty
                          Assistant U.S. Attorney

Date: 6/18/24

                          Bryan Fields
                          Assistant U.S. Attorney

Date: 6/18/24

                          Maura White
                          Trial Attorney